```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS

BOOM-OS, LLC, ANNEALISE        )
BONISTALLI, FLX WELLNESS,      )
LLC, A.B. FIT, LLC,            )
     Plaintiff,                )
                               )
     v.                        )    22-cv-10446
                               )
DOM N' TOM, INC.,              )
     Defendant.                )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                    September 29, 2023

I.   SUMMARY

Plaintiffs AnneAlise Bonistalli, A.B. Fit, LLC ("ABFIT"), FLX Wellness, LLC ("FLX"), and Boom-OS, LLC ("Boom") (collectively "plaintiffs") have brought claims for misrepresentation and fraud, breach of contract, gross negligence, and/or unfair and deceptive acts and practices in violation of M.G.L. Ch. 93A against defendant Dom N' Tom, Inc. ("D&T"). D&T argues that a forum selection clause requires plaintiffs to bring their claims in New York, and has moved to dismiss their claims, or in the alternative, to transfer them to New York. D&T has also requested attorneys' fees and costs.

For the reasons explained below, the court finds that there is an enforceable forum selection clause making New York the appropriate forum. Therefore, the court is granting D&T's request to transfer the case to New York. The court is denying D&T's request for attorney's fees.

## II. PROCEDURAL HISTORY

On March 24, 2022, plaintiffs filed a complaint against D&T. Compl. (Dkt. No. 1). On May 17, 2022, D&T filed a motion to dismiss and supporting memorandum. Mot. to Dismiss or Transfer (Dkt. No. 5); Mem. in Supp. (Dkt. No. 6). On May 31, 2022, the parties filed a stipulation concerning the forum selection clause. Stip. (Dkt. No. 8). On May 31, 2022, the plaintiffs filed an opposition to the motion to dismiss. Opp'n (Dkt. No. 9). On June 19, 2022, D&T filed a motion for leave to file a reply and attached its proposed reply. Mot. for Leave to Reply (Dkt. No. 10). The court allowed the motion for leave on June 28, 2022, Order (Dkt. No. 11), and docketed D&T's reply, Reply (Dkt. No. 12).

## III. ALLEGATIONS CONCERNING THE INSTANT MOTION

There are four plaintiffs: one individual and three entities. Plaintiff AnneAlise Bonistalli is a Massachusetts resident and personal trainer. Compl. ¶¶3, 10. The complaint alleges that she initially operated her personal training business through two Massachusetts LLCs: (1) plaintiff ABFIT, which provided rehabilitation, personal training, fitness facility design, and operation consulting services, id. ¶¶4, 11-12; and (2) plaintiff FLX, which Bonistalli used as the corporate vehicle for her work as the Managing Director of fitness and wellness facilities for Millennium Tower Boston, id. ¶¶5, 13.

2

Bonistalli believed that "there were no good software applications" for interactions and scheduling among personal trainers, customers, and/or fitness facilities. Id. ¶14. She recognized the importance of such software "to her continued success" and for "her businesses ABFIT and FLX." Id. ¶¶15, 17. In February of 2020, Bonistalli initiated a "relationship" with D&T, a New York corporation, to help design and create the software she envisioned. Id. ¶¶6, 16-19. Around that time, Bonistalli organized a third Massachusetts LLC - plaintiff Boom - whose purpose was "to own, use, promote and sell the fitness software which D&T agreed to produce and via plaintiff, FLX, in connection with her services as Managing Director of the Millennium facility." Id. ¶¶2, 17.

Bonistalli and Boom continued to negotiate the terms of an agreement for developing the software during the spring of 2020. Id. ¶¶20-29, 56. In April 2020, Boom and D&T executed a Master Services Agreement ("MSA"). Id. ¶27; see also Stip. ¶¶1-2 (Dkt. No. 8). The parties stipulate that the MSA included the following forum selection clause:

> 20.7 Governing Law & Venue. This Agreement shall be governed by, construed, and enforced in accordance with the substantive laws of the state of New York without regard to its conflict of laws principles. The parties further agree that any cause of action arising under this Agreement shall take place exclusively in the courts situated in New York, New York and the parties hereby submit to the venue of the courts situated therein.

3

Joint Stip. ¶7 (Dkt. No. 8). Bonistalli signed the MSA as manager of Boom. Id. ¶2.

The resulting working relationship between Boom and Bonistalli and D&T is alleged to have been unhappy and unsuccessful. The complaint alleges that the D&T harmed all of the plaintiffs, not just Boom. Id. ¶¶46. Referring to Bonistalli and FLX interchangeably, the complaint alleges that the harm they suffer was not having Boom's software available for their use. Id. ¶¶47-48. It further alleges that ABFIT and Bonistalli were "damaged by having been unable to use and profit from" Boom's software. Id. ¶49. It alleges that Bonistalli, FLX, and ABFIT relied on D&T's promises to Boom. Id. ¶¶65, 76.

IV. ANALYSIS

A. Legal Standard

Although the court is not dismissing plaintiffs' claims, for the purposes of this order, the court has applied the standard for a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and has accepted "all factual allegations as true and . . . [has] draw[n] all reasonable inferences in favor of the plaintiff." Rodriguez-Ortiz v. Marao Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007); Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009).

Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the

4

complaint." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). However, there are "narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint." Watterson, 987 F.2d at 3-4. When "a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998). The MSA falls within this exception and the court has considered the stipulation concerning the MSA's forum selection clause. See Stip. (Dkt. No. 8).

> B. The Mandatory Forum Selection Clause is Reasonable and Enforceable as to Boom and Its Claims Against D&T.

"When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 134 S. Ct. 568, 583 (2013). The party resisting the enforcement for a forum selection clause "bears the 'heavy burden' of demonstrating why the clause should not be enforced." Huffington v. T.C. Grp., LLC, 637 F.3d 18, 23 (1st Cir.

5

2011). Whether to enforce a forum selection clause requires a three-step inquiry.

First, a court must determine if the clause is permissive or mandatory. Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 46 (1st Cir. 2014). When the forum selection clause uses the word shall, "it is axiomatic" that there is a "mandatory connotation." Id. a 46-47.

Second, a court must examine the specific language of the clause to determine what claims are within its scope. Id. at 47. Although the phrase "arising out of" is not as broad in scope as term such as "relating to" or "in connection with," it covers claims that have a causal connection to the agreement. See Huffington, 637 F.3d at 22 (citing Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128-29 (2d Cir. 2001) (Sotomayor, J.)). The First Circuit has considered misrepresentation and Chapter 93A claims to be within the scope of a forum selection clause when they would not have been actionable but-for the parties entering the contract. See id. at 22-23; see also Carter's of New Bedford, Inc. v. Nike, Inc., 790 F.3d 289, 293 (1st Cir. 2015) ("The clause, if enforceable, applies to 'any action arising out of or in connection with the Agreement.' . . . The clause therefore applies to each of Carter's claims, including the Chapter 93A claim, since

6

each arises out of or in connection with the Agreement and its termination.").

In <u>Lambert v. Kysar</u>, 983 F.2d 1110 (1st Cir. 1993), the First Circuit enforced a forum selection provision, despite the plaintiff's inclusion of a "misrepresentation" claim, explaining that the plaintiff was arguing

> in effect, that he should be permitted to escape the consequences of the parties' forum selection merely by alleging tortious conduct relating to the <u>formation</u> (rather than the performance) of their contract.
> . . .
> The better general rule, we think, is that contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties.

<u>Id.</u> at 1121-1122. Accordingly, even when courts have found some claims not to be covered by the forum selection clause, that has not led them to conclude that the forum selection clause should be ignored. <u>Provanzano v. Parker View Farm</u>, 827 F. Supp. 2d 53, 60-61 (D. Mass 2011) (relying on <u>Lambert</u> and dismissing all claims to enforce a forum selection clause).

<u>Third</u>, a court should consider whether the party opposing the enforcement of the forum selection clause has made a "strong showing" that the clause is unreasonable and therefore unenforceable based on the following factors:

> (1) the clause was the product of "fraud or overreaching";

7

> (2) "enforcement would be unreasonable and unjust";
>
> (3) proceedings "in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court"; or
>
> (4) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."

Claudio-De Leon, 775 F.3d at 48-49. Although fraud is part of the first factor, that factor is not triggered "by claims that the contract was induced by fraud but only by a focused showing . . . that 'the inclusion of that clause in the contract was the product of fraud or coercion.'" Huffington, 637 F.3d at 24 (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n. 14 (1974)); see also Carter's, 790 F.3d at 293 (considering such a challenge "presented in a perfunctory and undeveloped manner" to be waived (citations omitted)).

Here, the language of the forum selection clause in the MSA between Boom and D&T is that:

> The parties further agree that any cause of action <u>arising under</u> this Agreement <u>shall</u> take place exclusively in the courts situated in New York, New York and the parties hereby submit to the venue of the courts situated therein.

Joint Stip. ¶7 (Dkt. No. 8) (emphasis added).

In view of the use of the word "shall," this is a mandatory forum selection clause.

8

The clause applies to all actions "arising under" the MSA. This is not the broadest language that could have been used in the MSA, but it clearly encompasses the breach of contract claim in Count 2. The language "arising under" is substantially similar to "arising out of," which covers claims that have a causal connection to the agreement. See Huffington, 637 F.3d at 22. The other counts that Boom brings against D&T - Count 1, pre and post-formation misrepresentation and fraud, and Count 4, Chapter 93A violations - are also arguably within the clause's scope. First, they concern, in part, post-formation actions that are related to the breach of contract allegations and that focus on the continuation of the contractual relationship. E.g., Compl. ¶¶61-62. Second, although some of the related allegations supporting Counts 1 and 4 concern D&T's alleged pre-formation misrepresentations, e.g., Compl. ¶¶53-59, pre-formation actions are not necessarily outside the scope of such a forum selection clause. See Huffington, 637 F.3d at 22 (finding that the forum selection clause applied because there would be no actionable pre-formation representation claim if the plaintiff had not entered the contract).[1] In any event, even if

---

[1] Plaintiffs devote a significant portion of their Opposition to arguments and cases concerning the enforceability of choice-of-law provisions when there are claims of pre-formation fraud or misrepresentation. That is not the issue raised in the motion to dismiss and this court declines to decide whether the choice-of-law provision in the MSA is enforceable. First Circuit case law indicates that forum selection and choice-of-law clauses present

some of the theories supporting Counts 1 and 4 are outside the scope of the forum selection clause, they are nevertheless factually related to claims within its scope and they do not warrant the court refusing to enforce it. Lambert, 983 F.2d at 1121-1122.

Finally, D&T is not required to show that the forum selection clause is reasonable. However, D&T has provided persuasive analysis that the forum selection clause is reasonable and that the court should enforce it. The plaintiffs have presented no arguments to the contrary in their opposition. The mere inclusion of a fraud claim unrelated to the forum selection provision is not enough. Carter's, 790 F.3d at 293.

> C. The Forum Selection Clause is Enforceable as to the Other Plaintiffs and Their Claims Because They Were Closely Related to Boom and the Forum Selection Clause Was Foreseeable to Them.

"In general, 'the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause.'" Europa Eye Wear Corp. v. Kaizen Advisors, LLC, 390 F. Supp. 3d 228, 231 (D. Mass. 2019) (quoting

---

distinct issues decided based on different considerations. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden, 11 F.4th 12, 20 n.5 (1st Cir. 2021). The plaintiffs are free to argue that the choice-of-law clause does not apply and that they may, for example, continue to pursue their Chapter 93A claims after this case is transferred to New York.

10

Aguas Lenders Recovery Grp., LLC v. Suez, S.A., 585 F.3d 696, 701 (2d Cir. 2009)). Forum selection clauses are enforceable against a non-signatory when it is "'closely related to the dispute such that it becomes foreseeable that it will be bound.'" Id. (citation omitted). There is a close relation when the non-signatory's interests are derivative of or related to the signatory's interests or conduct. Id.

When "'the source of the duty which the defendants allegedly owed to the plaintiffs is derived from the contractual relationship,' the contractual provisions," including the forum selection clause, "should govern." Doe v. Seacamp Ass'n, Inc., 276 F. Supp. 2d 222, 228 (D. Mass. 2003). The First Circuit has applied Lambert's instruction that tort claims related to breach of contract claims should also be litigated in the forum specified in the forum selection clause in cases where the tort claim was brought by a non-signatory to the agreement. Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 24 (1st Cir. 2009) (affirming dismissal of a wife's tort claims related to her husband's injury when her husband had signed an agreement with a forum selection clause).

Neither Bonistalli, ABFIT, nor FLX, were signatories to the MSA. However, the complaint plausibly alleges that they were closely related to Boom and that it was foreseeable to them that

11

the MSA would bind them. The complaint alleges that Bonistalli used ABFIT and FLX to run various aspects of her fitness business. Compl. ¶¶4-5, 11-13. Bonistalli wanted to develop a fitness software for her own success and for the success of "her businesses FLX and ABFIT." Id. ¶¶15, 17. She formed Boom to "own, use, and promote" the software "via plaintiff, FLX." Id. ¶¶18. Bonistalli started the negotiations with D&T in her individual capacity. Id. ¶6, 16-19. Once she formed Boom, the complaint continually refers to her taking part in them alongside Boom rather than as its representative. Id. ¶¶20-29, 56. She ultimately signed the MSA between Boom and D&T in her capacity as Boom's manager. Stip. ¶2 (Dkt. No. 8).

In addition, the complaint alleges that Bonistalli, FLX, and ABFIT all relied on D&T's representations to Boom and were damaged by D&T's conduct. Compl. ¶¶46, 65, 76. Specifically, they anticipated being able to use and/or profit from Boom's software. Id. ¶¶47-49. Plaintiffs' attempts to argue that their interests were not derivative of or related to Boom's interests and D&T's successful performance of the MSA contradict their allegations that they suffered damage related to D&T's alleged misrepresentations and non-performance. Absent the MSA, on which all of D&T's work was predicated, ABFIT, FTC, and Bonistalli would have no claims. Indeed, their claims in Counts 1 and 3 and

Bonistalli's claim in Count 4 are the sort of factually related claims where any duty D&T owed the plaintiffs arose from the contractual relationship. Doe, 276 F. Supp. 2d at 228. Accordingly, the forum selection clause is enforceable as to Bonistalli, FLX, and ABFIT and their claims.

> D. In the Interest of Justice, the Court is Exercising Its Discretion to Transfer the Case to New York.

A court may dismiss a complaint based on a forum selection clause under Fed. R. Civ. P. 12(b)(6). Claudio-De Leon, 775 F.3d at 46. A court may also enforce a forum selection clause by transferring a case to the proper forum pursuant to 28 U.S.C. §1404(a). Atl. Marine, 134 S. Ct. 568, 582 (2013).

The court finds that it would serve the interests of justice for plaintiffs' complaint, which has now been pending for over a year and a half, to be transferred rather than dismissed and started anew.

> E. Although D&T's Arguments Concerning the Forum Selection Clause Were Meritorious, an Award of Attorneys' Fees and Costs it Not Justified.

The court may award attorneys' fees and costs to a prevailing party when the losing party has engaged in egregious conduct, including frivolous litigation. Dubois v. United States Dept. of Agric., 270 F. 3d 77, 80 (1st Cir. 2001).

Such a harsh remedy is not merited here. The application of the forum selection clause to the non-signatory plaintiffs and to

13

the claims in Counts 1, 3, and 4, presented serious issues. While the court does not find plaintiffs' position meritorious, it was not frivolous.

V.   ORDER

In view of the foregoing, it is hereby ORDERED that:

1.   Defendant D&T's motion to dismiss or transfer (Dkt. No. 5) is ALLOWED, in part, and DENIED in part. D&T's motion to dismiss is DENIED and its motion to transfer is ALLOWED.

2.   D&T's request for attorney's fees is DENIED.

3.   This case shall be transferred to the United States District Court for the Southern District of New York. A separate order effectuating the transfer will issue.

_____
UNITED STATES DISTRICT JUDGE